UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CHRISTOPHER A. GILLIARD, *et al.* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No. 1:11-cv-331 |
| v. | ) | |
| | ) | Judge Mattice |
| RECONTRUST COMPANY, N.A., *et al.* | ) | |
| | ) | |
| *Defendants*, and | ) | |
| | ) | |
| TENNESSE FARMERS MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| *Intervenor*. | ) | |

## <u>MEMORANDUM</u>

Before the Court are Defendants' Motions to Dismiss (Docs. 5, 11), in which they move the Court to dismiss Plaintiff's Complaint (Doc. 1) in its entirety, and Intervenor's Motion for Summary Judgment (Doc. 64). For the reasons discussed, Defendants' Motions to Dismiss will be **GRANTED**, Intervenor's Motion for Summary Judgment (Doc. 64) will be **DENIED WITHOUT PREJUDICE**, and all other outstanding Motions will be **DENIED AS MOOT.**

## I.    BACKGROUND

In November 2011, Plaintiffs Christopher and Julia Gilliard filed a 25-page *pro se* Complaint (Doc. 1), acting "Individually and As Private Attorney Generals." Plaintiffs identified sixteen specific counts against multiple Defendants: Recontrust Company, N.A.; Bank of America, N.A.; Bank of America Home Loans (collectively, with Bank of America, N.A., "BOA"); Greene County Bank Corp.; Mortgage Electronic Registration

Systems, Inc. ("MERS"); The Bank of New York Mellon; and the Bank of New York (collectively, with Bank of New York Mellon, "BNY").[1]

Plaintiffs' Complaint relates to a home loan they received to purchase real property in Niota, Tennessee; the transfer of the loan; and the foreclosure proceedings initiated following Plaintiffs' default on the loan. (*See* Doc. 1). On July 28, 2006, Plaintiffs executed a promissory note ("Note") setting forth the terms of the loan with Defendant and lender Greene County Bank. (Doc. 1-1).[2] The same day, Plaintiffs executed a Deed of Trust that identified MERS as a beneficiary. (Doc. 6-2). The Deed of Trust stated that the Note or a partial interest therein "can be sold one or more times without prior notice to Borrower." (*Id.* at 12). It also contains an acceleration clause, which stated that, on default, the lender may require immediate payment of the loan, invoke the "power of sale," and seek other legal remedies. (*Id.* at 13). Plaintiffs acknowledge that they defaulted on the loan, and they appear to allege that foreclosure proceedings commenced on August 29, 2011, in McMinn County, Tennessee. (Doc. 1 at 7).

The "factual allegations" in Plaintiffs' Complaint are diffuse, and it is not readily apparent how the allegations therein relate to the defined causes of action listed later. Plaintiffs allege that, immediately after its inception, their loan was securitized and sold by Greene County Bank to Defendant BOA. (Doc. 1 at 4). They assert that, through its

---

[1] Based on Defendants' assertions, it appears that some of these Defendants (i.e., Bank of America Home Loans and Bank of New York) either never existed or no longer exist in their identified form. (*See* Doc. 6 at 1 n.1).

[2] While assessment of the facial sufficiency of a complaint must ordinarily be undertaken without regard to matters outside the pleadings, the Court may "consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (citation and alteration omitted).

2

securitization and registration with the Securities and Exchange Commission as a Real Estate Mortgage Investment Conduit, the loan was "converted forevermore into a stock," and "forever lost its security." (*Id.* at 5). Plaintiffs contend that various shareholders are the "real parties in interest," and "no one of them can foreclose on Plaintiff's home." (*Id.* at 6).

In sum, it appears to the Court that Plaintiffs contend that the various transfers of their mortgage renders the terms of the Note and the Deed of Trust unenforceable.[3] Plaintiffs allege that the Note "has the only legally binding chain of title," but that it "had to be destroyed upon securitization because the Note and the stock cannot exist at the same time." (*Id.* at 7). They assert that the Defendants BNY, MERS, and Recontrust, have no interest in the Note or Deed of Trust.

Plaintiffs identify 16 discrete counts in their Complaint. Counts I through X (the "TILA claims") are based upon certain provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and implementing regulations, 12 C.F.R. 226, *et seq.* (Doc. 1 at 11-17). Put succinctly, in the TILA claims, Plaintiffs appear to allege that Defendants: failed to provide the notice specified in the Uniform Commercial Code (Count I); rendered disclosures that were not "grouped together and were not segregated from everything else" (Count II); did not disclose the right to rescind the settlement documents, which were left unsigned (Count III); provided "no separate form to cancel" (Count IV); failed to make the requisite interest disclosures "together with other

---

[3] Plaintiffs identify perceived flaws in the endorsement and assignments of the original Note. (*See* Doc. 1 at 6-9). They also allege that the Note was "unduly confusing," and they assert that neither MERS nor BNY has any standing to enforce the Note's terms. (*Id.* at 8-10). These allegations do not appear to relate directly to Plaintiffs' identified claims, which, for reasons discussed below, must fail. Additionally, it does not appear to the Court that the segmented narrative in Plaintiffs' "Factual Allegations" section raises any separately cognizable claims, especially in view of the discrete counts identified in the latter half of the Complaint. *See, e.g., Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006) (holding that a court is "not require to either guess the nature of or create a litigant's claim").

information within the documents" (Count V); provided no "good faith estimate copy" (Count VI); provided no statement concerning the right to acceleration or directing Plaintiffs' attention to the "appropriate contract document" (Count VII); continue to violate TILA and the Consumer Credit Protection Act, though no specific explanation is offered in this regard (Count VIII); failed to disclose that the mortgage "balance is determined without first deducting all credits and payments made and payments [sic] as required by" the Code of Federal Regulations (Count IX); and did not disclose an itemization of charges (Count X).

Count XI of the Complaint is based on the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Doc. 1 at 17). Plaintiffs assert that Defendants sent fraudulent correspondence and unlawfully acted when initiating foreclosure proceedings. (*Id.*). Further, Plaintiffs maintain that Defendants' statements concerning their purported interests in the mortgage were deceptive and unlawful. (*Id.* at 18).

Count XII of the Complaint asserts a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (*Id.* at 18-19). In Count XII, Plaintiffs make three allegations: (1) that "Defendants failed to timely inform Plaintiffs of any alleged Appointments, Assignments and transfers of the mortgage in violation [of] RESPA"; (2) that "Defendants failed to timely notify Plaintiffs of any change of servicers"; and (3) "Plaintiffs have previously made written demands to Defendants to show evidence of standing to claim a debt and Defendants have refused to evidence such standing." (*Id.*).

Counts XIII ("Slander of Title/Petition to Quiet Title"), XIV ("Fraud and Misrepresentation Tennessee Consumer Protection Act"), XV ("Negligent Supervision"),

4

and XVI ("Common Law Fraud and Injurious Falsehood") all arise under Tennessee state law.

Defendants have moved to dismiss the Complaint, and Plaintiffs oppose the Motions. (Docs. 5, 6, 11, 12, 13).

## II.    ANALYSIS

"A motion to dismiss for failure to state a claim [pursuant to Fed. R. Civ. P. 12(b)(6)] is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010). For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice," and a plaintiff's legal conclusions couched as factual allegations need not be accepted as true. *Id.*; *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)). The reviewing court must determine not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, to

survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*citing Twombly*, 550 U.S. at 555).

The Court notes that Plaintiff is proceeding in this action *pro se*. The Court is mindful that *pro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 358 (6th Cir. 2012). However, the leniency afforded to *pro se* plaintiffs is not boundless, and the Court is "not require[d] to either guess the nature of or create a litigant's claim." *See, e.g., Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002).

### A.    TILA Claims (Counts I-X).

Based in part on the alleged violations of TILA, Plaintiffs seek monetary damages. (Doc. 1 at 24). They also appear to assert a statutory right of rescission. (*See id.* at 12-13).

Plaintiffs' claim for damages under TILA, 15 U.S.C. § 1061, *et seq.*, is barred by the applicable statute of limitations. TILA provides in relevant part: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1640(e). Plaintiffs have alleged that Defendants failed to disclose

certain information in connection with their Note and Deed of Trust. Plaintiffs do not dispute that they received their loan and executed the Note and Deed of Trust on July 28, 2006. (Docs. 1-1, 6-2). They did not file suit until November 2011, over five years later. Under the plain terms of the statute, their claim for damages is time-barred.

Likewise, Plaintiffs' claim to rescission must fail. TILA provides borrowers a right to rescind a transaction if the lender fails to make certain material disclosures. *See* 15 U.S.C. § 1635; 12 C.F.R. § 226 *et seq.* (defining, among other things, the disclosures a lender must make). A borrower has the option to rescind within three days of the "consummation of the transaction or the delivery of the information and rescission forms . . . whichever is later . . . ." 15 U.S.C. § 1635(a); see 12 C.F.R. § 226.23. If the required notice or material disclosures are not delivered, "the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f) ("[T]he obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property . . . .").

Even assuming that Defendants failed to make the requisite disclosures, Plaintiffs would have had three years to exercise their right to rescind. 12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f). Because they executed the Note and Deed of Trust in July 2006, the right to rescind expired in 2009 at the very latest. Thus, Plaintiffs' claims under TILA are time-barred and will be **DISMISSED**.

### B.     FDCPA (Count XI)

Plaintiffs allege that Defendants violated the FDCPA by "sending false correspondence to Plaintiffs and third persons and assisting in the filing of an unlawful foreclosure action . . . ." (Doc. 1 at 17). Plaintiffs claim must be dismissed.

7

Under the FDCPA, a plaintiff may bring a civil action against a debt collector who engages in "abusive debt collection practices," 15 U.S.C. §§ 1692(e), 1692k. Here, Plaintiffs complain that Defendants violated 15 U.S.C. § 1692e(2), (5), (7), and (8), and § 1692f(1) and (8). (Doc. 1 at 17-18). Those provisions respectively prohibit debt collectors from: making a false representation as to the status of a debt; threatening to take action that cannot lawfully be taken; falsely representing that the consumer committed a crime or other conduct to disgrace the consumer; communicating or threatening to communicate false credit information; collecting a debt unless the amount is authorized by contract or law; and using on an envelope a language or symbol other than the debt collector's address. *See* 15 U.S.C. § 1692e(2), (5), (7), (8); 15 U.S.C. § 1692f(1) & (8).

The FDCPA draws a distinction between "creditors" and "debt collectors." A creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed," excluding "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir.2007) ("The term 'debt collector' has a particular meaning, however: it refers only to persons attempting to collect debts due 'another.'").

Generally, "a creditor is not a debt collector for the purposes of FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Id.* (quoting

8

*Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 794 (W.D.Ky.2003)). Further, the statutory definition of "debt collector" specifically excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person[, or] concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(ii)-(iii). In short, creditors or the assignees of a consumer's debt – so long as the debt was not in default at the time it was assigned – are not "debt collectors" within the meaning of § 1692a. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (quotation omitted).

Plaintiffs have not alleged that Greene County Bank, BNY, BOA, or MERS are "debt collectors" to whom the FDCPA would apply. Indeed, just the opposite appears true. Plaintiffs have not claimed that any of these Defendants is attempting to collect on a debt due another, and no Defendant appears from the pleadings to be a "non-originating debt holder that either acquired a debt in default or ... treated the debt as if it were in default at the time of acquisition." *See Bridge*, 681 F.3d at 363. Based on the pleadings, the Court cannot plausibly infer that these Defendants are anything other than original lenders, original mortgage servicers, or assignees that received assignment of the loan prior to Plaintiffs' default. Thus, Plaintiffs have failed to allege that these Defendants are "debt collectors" within the meaning of the FDCPA.

A liberal construction of the Complaint and attachments suggests that Defendant Recontrust could be considered a "debt collector" within the meaning of the FDCPA. (*See, e.g.*, Doc. 1-2 at 1-3). Assuming Recontrust is a debt collector, Plaintiff has offered no facts on which the Court could plausibly infer that it violated the FDCPA. Plaintiffs have referred to correspondence sent by "Defendants," which they characterize as

"false." (Doc. 1 at 17). They complain that Defendants attempted to foreclose on the property and take other actions "that they could not legally take without the ruse and falsities committed upon the Plaintiffs in violation of the [FDCPA]." (*Id.*). As pleaded, the Complaint is insufficient.

Simply put, Plaintiffs' pleadings contain little more than unadorned "the-defendant-unlawfully-harmed-me" accusations. *Iqbal*, 556 U.S. at 678. The legal conclusions proffered by Plaintiffs are wholly unsupported by any factual pleadings. While Plaintiffs appear to complain of two letters attached to their Complaint, they do not explain how the letters run afoul of the FDCPA. (*See* Doc. 1-2 at 1-3, 20; Doc. 1-3 at 1-5). Plaintiffs allege that the letters were fraudulent, in that Recontrust falsely claimed to be the assignee of Deed of Trust, but the material they attached to their own Complaint belies their assertion. (*See* Doc. 1-3 at 1-5) (providing affidavits demonstrating assignment of the Deed of Trust from MERS to BNY and from BNY to Recontrust). Beyond the characterization of the correspondence and collection efforts as "unfair," "deceptive," and "unlawful," – legal conclusions the Court is not obliged to accept – nothing within the Complaint raises a plausible claim that Plaintiffs are entitled to relief under the FDCPA. *Iqbal*, 556 U.S. at 678.

Having no factual allegations to support an FDCPA claim as to any Defendant, Plaintiffs' claim under the FDCPA will be **DISMISSED**.

### C.    RESPA  (Count XII)

The nature of Plaintiffs' claims relating to RESPA, 12 U.S.C. § 2601, *et seq.*, is somewhat unclear. They complain that Defendants failed to disclose various mortgage transfers and transactions over the life of the loan. Plaintiffs appear to bring a RESPA claim of the type contemplated by 12 U.S.C. § 2605 ("Servicing of mortgage loans and

administration of escrow accounts"). To the extent the claim relates to the origination of the loan, it must fail. RESPA claims of this kind are subject to a three-year statute of limitations. 12 U.S.C. § 2614. Insofar as Plaintiffs executed the Note and the Deed of Trust in July 2006, any claim related to that transaction must have been raised in or before July 2009.

Even assuming that Plaintiffs have sufficiently alleged a breach of RESPA duties and that such a claim is not time-barred, their Complaint still cannot withstand the present Motions to Dismiss. In the case of a mortgage servicer's failure to comply with RESPA, §2605 permits individuals to recover "any *actual* damages to the borrower as a result of the failure" or "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). Several courts, including this Court and others in this circuit, have concluded that a Plaintiff bringing a claim under § 2605 must therefore allege "either actual damage from the nondisclosure of the assignment of the *servicing* of the loan – as compared to nondisclosure of the terms of the mortgage – or (2) a pattern or practice of nondisclosure by the defendants that would warrant statutory damages." *Frazile v. EMC Mortg. Co.*, 382 F. App'x 833, 836 (11th Cir. 2010); *see also, e.g., Hutchens v. Bank of America N.A.*, 2012 WL 1618316, at *6 (E.D. Tenn. May 9, 2012) ("District courts within the United States Court of Appeals for the Sixth Circuit and other circuits have held that a plaintiff must allege actual damages to obtain relief under RESPA."); *McGory v. BAC Home Loan Servicing*, 2011 WL 1743475, at *3 n.2 (N.D. Oh. 2011) (holding that  alleging a breach of RESPA without at least identifying actual damages is insufficient to support a claim); *Anderson v. Barclays Capital Real Estate*, 2010 WL 2541807, at *6 (N.D. Oh. June 18, 2010)

("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.") (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)).

Here, Plaintiffs have alleged that Defendants violated RESPA's notice provisions.[4] They have not, however, identified any actual damages resulting from the purported violation. Nor have they alleged a pattern or practice of nondisclosure sufficient to justify statutory damages. Without more, their RESPA claim is insufficient, and it will be **DISMISSED**.

## D.    Slander of Title / Petition to Quiet Title  (Count XIII)

Plaintiffs' slander-of-title claim must fail. (*See* Doc. 1 at 19).   As this Court has recently summarized:

> To establish slander of title, a plaintiff must prove: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn.Ct.App.1999) (citation omitted). "Statements made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false may be malicious within the scope of a libel of title action." *Id.* (citation omitted). "To assert this cause of action, the plaintiff must allege 'malice ... in express terms or [by] any such showing of facts as would give rise to a reasonable inference that [the defendant acted maliciously.]'" *Id.* (alteration in original and citation omitted). "A good faith, but erroneous, claim of title does not constitute a cause of action for libel of title." *Id.* (citation omitted).

*Flynn v. GMAC Mortg., LLC*, 2011 WL 4708858, at *4 (E.D. Tenn. Oct. 4, 2011) (alterations original).

---

4    As noted, the precise nature of the RESPA claim is somewhat unclear.   However, it appears that Plaintiffs suggest that a servicer's violation of RESPA's disclosure provisions should relieve them of all responsibilities arising from a loan arrangement into which they voluntarily entered.  This would be an outcome the Court cannot countenance, especially in view of the statutory provision prescribing appropriate damages.  *See* 12 U.S.C. § 2605(f)(1).

Plaintiffs have failed to plead that Defendants acted with malice, which is a "key ingredient" of a slander-of-title claim. *Harmon v. Shell*, 1994 WL 148663, at *4 (Tenn. Ct. App. Apr. 27, 1994). Nor have they pleaded facts giving rise to a reasonable inference that Defendants acted maliciously. *See Flynn*, 2011 WL 4708858, at *4. Thus, their slander-of-title claim must fail. This alone is a fatal defect; for the sake of brevity, the Court will not address other potential bases for dismissal of this claim.

Additionally, Plaintiffs' petition to quiet title (apparently brought primarily against Greene County Bank) is without merit. Plaintiffs identify no basis for their petition to quiet title other than their unsupported assertions that: they are "the rightful owners of the subject property," all Defendants' interest in the property is void, and any transfer of interest was invalid. Plaintiffs have pleaded no coherent facts demonstrating the plausibility of this claim – indeed, as above, it appears directly contradicted by material referenced in and appended to the Complaint. Thus, their petition to quiet title must be denied, and Count XIII of the Complaint will be **DISMISSED**.

### E.    TCPA (Count XIV)

Plaintiffs allege in Count XIV that "Defendants intentionally instituted unlawful foreclosure against Plaintiffs based upon fraudulent documents filed in" state court. (Doc. 1 at 21). They assert that this fraud constituted an unfair and deceptive trade practice in violation of the TCPA, Tenn. Code Ann. § 47-18-109, *et seq.* In pertinent part, Defendants argue that Plaintiffs' claim must fail, as the TCPA does not apply to mortgage foreclosure proceedings. The Court agrees with Defendants.

To recover under the TCPA, a plaintiff must allege that he suffered an ascertainable loss of money or property due to an unfair or deceptive act or practice. Tenn. Code Ann. § 47-18-109(a)(1). A plaintiff must also plead facts that demonstrate

13

that the unfair or deceptive acts were the proximate cause of his injuries. *See White v. Early*, 211 S.W.3d 723, 741 (Tenn.Ct.App.2006). Additionally, the unfair or deceptive acts must affect trade or commerce, as defined by the TCPA. *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 842 (Tenn. 1996); *accord. Davenport v. Bates*, 2006 WL 3627875, at * 17 (Tenn. Ct. App. Dec. 12, 2006).

Although the Complaint is unspecific, Count XIV clearly relates to Defendants' alleged misconduct surrounding the foreclosure proceedings commenced in McMinn County Court. (*See* Doc. 1 at 21-22). This Court, like many others to have addressed the issue, has concluded "that the TCPA does not apply to foreclosure disputes." *See, e.g., Gray v. Bank of America, N.A.*, 2012 WL 3230387, at *4 (E.D. Tenn. Aug. 6, 2012) (citing *Flynn v. GMAC Mortg., LLC*, 2011 WL 4708858, at *2–*3 (E.D.Tenn. Oct.4, 2011) (dismissing the plaintiff's TCPA claim because "the TCPA does not apply to repossession and collateral disposition activities by creditors, including foreclosure activities"); *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 841–42 (Tenn.1996) (affirming the dismissal of the TCPA claim and holding that the bank's actions in repossessing collateral did not affect trade or commerce within the meaning of the TCPA)); *Peoples v. Bank of America*, 2012 WL 601777, at *9 (W.D. Tenn. Feb. 22, 2012) (collecting cases and noting that "[c]ourts applying Tennessee [law] have consistently held that the TCPA does not reach the manner in which a lender conducts foreclosure proceedings"). Inasmuch as the TCPA does not apply to the actions at issue in this case, the Court will not address Defendants' other arguments with respect to Plaintiffs' TCPA claim (e.g., that the Complaint fails to meet the TCPA's heightened pleading standard), and Count XIV will be **DISMISSED**.

## F.    Negligent Supervision (Count XV)

In support of Count XV, Plaintiffs state only the following: "Defendants had a duty of care to supervise the actions of their employees and agents"; "Defendant[s'] employees and/or agents' actions, as alleged previously, were unlawful and violated Plaintiff[s'] property rights"; "Defendants knew or should have known that their employees and/or agents were acting unlawfully"; "As a result of the Defendants' negligent supervision, Plaintiffs were proximately injured by the acts of their employees and/or agents";  "An agency relationship exists between the individual defendants and the corporate defendants"; "The actions of the individual defendants were done on behalf of and at the direction of the corporate defendants and within the scope of their agency relationship"; and "As a result of the actions of all the defendants, the Plaintiffs were injured."  Plaintiffs' negligent supervision claim is precisely the kind that, under *Iqbal*, cannot withstand a motion to dismiss.

First, the Court notes that the claim references "individual defendants" that are not named and do not otherwise appear in the Complaint.  Further, Plaintiffs have failed to plead any duty owed to them by Defendants or how such a duty could have been breached – these are essential elements to any negligence claim under Tennessee law. *See, e.g., Estate of French v. Stratford House*, 333 S.W.3d 546, 561 (Tenn. 2011) (outlining the elements of a "common law negligence" claim under Tennessee law); *see also Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993) (addressing generally negligent supervision under Tennessee law).  They have failed to identify the employees' actions that allegedly caused them harm.  They have even failed to state which of the many Defendants is  allegedly responsible for negligently

supervising its employees.  These are meaningful omissions, and the Complaint as written simply cannot support a viable claim.

Count XV of the Complaint may be adequately summarized as: "Some Defendants have employees who were negligently supervised and engaged in unlawful acts, and Plaintiffs were harmed as a result."  Without more, this is not sufficient to allow the Court to draw any reasonable inferences concerning Defendants' liability – in fact, Plaintiffs' allegations are not even enough to discern the identity of the Defendant or Defendants about which they now complain.  Plaintiffs' negligent supervision claim fails to raise even a speculative right to relief, much less a plausible one.  *See Iqbal*, 556 U.S. at 678-79.  Consequently, Count XV will be **DISMISSED**.

### G.    "Common Law Fraud and Injurious Falsehood" (Count XVI)

Finally, Count XVI alleges that "[t]he publicly filed false mortgage assignments enabled all of the Defendants to perpetrate the fraudulent foreclosure."  (Doc. 1 at 23). Plaintiffs assert that Defendants "fraudulently concealed their wrongdoings" and materially misstated certain terms of the loan," and that their "use of deceit or trickery caused Plaintiffs to act to their disadvantage."

In order to state a claim for fraud or intentional misrepresentation, a plaintiff must allege facts supporting the following essential elements:

> (i)    the defendant made a representation of an existing or past fact; (ii) the representation was false when made; (iii) the representation was in regard to a material fact; (iv) the false representation was made either knowingly or without belief in its truth or recklessly; (v) plaintiff reasonably relied on the misrepresented material fact; and, and (vi) plaintiff suffered damage as a result of the misrepresentation."

*Diggs v. Lasalle Nat'l Bank Ass'n*, 2012 WL 1939799, at *4 (Tenn. Ct. App. May 30, 2012).  A party alleging fraud must plead "with particularity" the circumstances

constituting the fraudulent conduct. Fed. R. Civ. P. 9(b); *see also Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) ("While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed.R.Civ.P. 9(b).").

Under Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012). In this case, however, Plaintiffs have merely asserted that Defendants made false "material representations" in an effort to "perpetrate the fraudulent foreclosure" and "conceal their wrongdoings." Plaintiffs never specify the misrepresentations about which they complain. It is not clear whether the allegedly fraudulent statements relate to the origination of the loan, subsequent transfers, the foreclosure proceedings, or something altogether different. Defendants correctly argue that Plaintiffs have failed to set forth the basic elements of a fraud claim, much less abide by the heightened pleading standards of Rule 9.

Further, Plaintiffs have failed to identify which Defendant allegedly made the misrepresentations. This too is a substantial defect. *See id.* ("Rule 9(b) does not permit a plaintiff to allege fraud by indiscriminately grouping all of the individual defendants into one wrongdoing monolith.") (quoting with approval *United States ex rel. Branhan v. Mercy Heatlh Sys. of Sw. Oh.*, 188 F.3d 510 (table), 1999 WL 618018, at *9 (6th Cir. Aug. 5, 1999) (Clay, J. concurring in part and dissenting in part)).

Plaintiffs' fraud claim does not give rise to a plausible claim for relief, and it fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). Thus, it will be **DISMISSED.**[5]

### H.    Intervenor

One issue remains pending before the Court. In April 2012, Intervenor Tennessee Farmers Mutual Insurance Company ("Farmers") filed a Motion to Intervene in this action. (Doc. 29). In support, Farmers alleged that it insured the property at issue in this dispute, which had been damaged by fire. It stated that it had issued a check in the amount of $99,775.55 to Plaintiffs and BAC Home Loans Servicing, LP.[6] Farmers asserted that Plaintiffs returned the check stating that "no financial institution has a valid mortgage or lien against their residence." Because no party responded to Farmers' Motion, the United States Magistrate Judge assigned to this case deemed all objections waived and permitted Farmers to intervene. (Doc. 30). The Magistrate Judge later granted Farmers permission to deposit the sum of $99,775.55 into the Court registry. (Doc. 38). Farmers then filed a petition with the Court, asking it to "determine the rights of [Plaintiffs] and [BOA] with respect to the funds deposited with the Court," and it has since filed a Motion for Summary Judgment, asking the Court for a declaration that "it has fulfilled all of its obligations under the homeowner's insurance policy." (Docs. 31, 64; *see* Doc. 66).

---

[5] If read extremely generously, Plaintiffs' alternative characterization of Count XVI as one for "injurious falsehood" may imply that they wish to reiterate their claim for libel or slander of title. See *Wagner v. Fleming*, 139 S.W.3d 295, 301-02 (Tenn. Ct. App. 2004) (noting that the common law tort of injurious falsehood may include, among other things, the theories of libel of title and slander of title). In order to effectively plead such a claim, Plaintiffs must plead, among other things, that Defendants acted maliciously. *See Flynn*, 2011 WL 4708858, at *4; *Johnson v. Madison Cnty.*, 2011 WL 4496681, at *4 (Tenn. Ct. App. Sept. 29, 2011). As discussed above, they have not done so here.

[6] According to BOA, BAC Home Loans Servicing, LP is now a part of BOA. (Doc. 6 at 1 n.1).

18

In view of Farmers' subsequent filings and the conclusions in this Memorandum, it has become clear that Farmers cannot be afforded the relief it seeks in the context of this action. In essence, Farmers' Motion for Summary Judgment asks the Court to: determine who holds a mortgage as to Plaintiffs' property, interpret an insurance policy, define the universe of potential payees under that policy, and issue a declaration insulating Farmers from any future liability. This lawsuit requires the Court to make none of those determinations. In this Memorandum, the Court has only concluded that Plaintiffs' claims against various financial institutions lack merit. The Court denied Plaintiffs' petition to quiet title and determined that Plaintiffs' theory concerning the apparent dissolution of their mortgage is deficient. However, the Court did not affirmatively determine the identities of the present title- or mortgage-holders; such a determination is well beyond the scope of this litigation.

More to the point, the Court is not convinced that the disposition of Plaintiffs' Complaint in any way impedes Farmers' right to protect its interest in the disputed property. *See* Fed. R. Civ. P. 24(a)(2) (providing that, absent a federal statute granting a right to intervene, a court must grant intervention only when a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest"); *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (noting that a party seeking to intervene as of right must demonstrate, among other things, that its "ability to protect [its] interest may be impaired in the absence of intervention"). Any resolution of Farmers' recent claims would spawn unnecessary satellite litigation that is, at best, beyond the scope of the original action. This, in turn,

would prevent the entry of judgment as to the substantive claims in this matter, even though those claims have been conclusively decided. *See* Fed. R. Civ. P. 24(b) (granting the court discretion to permit intervention under some circumstances, but directing the court to consider whether intervention would unduly delay or prejudice the adjudication of the original parties' rights).

Farmers' recent claims appear to be in the nature of a discrete interpleader action. *See* 28 U.S.C. § 1335; Fed. R. Civ. P. 22. Unlike the instant case, interpleader actions typically proceed in two stages. In the first stage, a court will examine whether it has jurisdiction and whether the stakeholder has properly invoked interpleader. *United States v. High Tech. Prods., Inc.,* 497 F.3d 637, 641 (6th Cir. 2007). Only after determining that interpleader is available will a court issue an order discharging the stakeholder – precisely the relief Farmers now seeks in its Motion for Summary Judgment. *Id.* The Court cannot grant Farmers' Motion without first determining the fundamental availability of interpleader, which is completely unrelated to the rights and liabilities of the original parties to this litigation.

Consequently, with the benefit of additional briefing, the Court now concludes that the Orders permitting Farmers to intervene and deposit $99,775.55 in the Court's registry were improvidently granted. Thus, those Orders (Docs. 30, 38) will be **VACATED**. Because it is no longer a party to this action, Farmers' Motion for Summary Judgment (Doc. 64) will be **DENIED WITHOUT PREJUDICE**. Should Farmers wish to pursue the claims it has articulated in this litigation, it may seek to file an interpleader action. The Court will direct the Clerk to reimburse Farmers in the amount of $99,775.55.

### III. CONCLUSION

Accordingly, and for the reasons stated, Defendants' Motions to Dismiss (Docs. 5, 11) will be **GRANTED**, Farmers' Motion for Summary Judgment (Doc. 64) will be **DENIED WITHOUT PREJUDICE**, and Plaintiffs' Complaint will be **DISMISSED WITH PREJUDICE**.  All other outstanding Motions will be **DENIED AS MOOT**.

An Order consistent with this Memorandum will be entered separately.


Dated this 25th day of September, 2012.


                                            _____*/s/ Harry S. Mattice, Jr.*_____
                                            HARRY S. MATTICE, JR.
                                            UNITED STATES DISTRICT JUDGE